# Carol Shields v. Rolland Gerhart, et al.

[582 A.2d 153]

No. 88-148

Present: Allen, C.J., Peck, Gibson and Dooley, JJ.

Opinion Filed September 7, 1990

*William A. Hunter,* Ludlow, for Plaintiff-Appellee.

*Jeffrey L. Amestoy,* Attorney General, and *Ron Shems,* Assistant Attorney General, Montpelier, for Defendants-Appellants.

**Dooley, J.** This is a civil rights action in which the plaintiff, Carol Shields, alleges that defendants, the Vermont Department of Social and Rehabilitation Services (SRS) and three employees of the department, revoked her license to run a day care center in retaliation for her activities in opposing an SRS policy against the use of corporal punishment in licensed day care facilities. This interlocutory appeal is brought from the opinion and order of the trial court denying defendants' motion to dismiss. We affirm.

Plaintiff was licensed to run a day care facility in her home in 1978 in accordance with 33 V.S.A. §§ 2752(2), 2852(a). Between 1978 and September, 1981 when she applied for a new license because she was moving her home and the facility, plaintiff and SRS disagreed over plaintiff's use of physical discipline on children in her day care facility. In November of 1981, plaintiff was notified orally that a new license would not be granted unless she ceased using corporal punishment. At that time, SRS had in effect regulation 124.40, which prohibited "cruel, severe, unusual or unnecessary punishment" of children in licensed day care facilities. SRS interpreted the legislation to prohibit corporal punishment. Plaintiff was a vociferous opponent of this SRS interpretation. She argued against it in the press and before the Legislature.

In January of 1982, plaintiff formally applied for a new license for the relocated facility and was denied in March. Despite the denial, she operated a day care center without a license until she received notice of a violation of SRS licensing requirements. She again applied for a license and was denied. This time she appealed and was allowed to operate pending the appeal. She prevailed on appeal and was licensed through June, 1984.

In April, 1984, plaintiff applied for a renewal of her license, and she was visited by Durwood Collier and Frederick Satink, SRS employees and defendants in this action. During this visit, defendants noticed effluent rising to the surface in plaintiff's yard, near where the children played. Plaintiff told the inspectors of a problem with her septic system and that arrangements had been made to correct the problem as soon as the ground was dry enough. Plaintiff's correction plan had been approved by the local health official.

At this point, the parties' factual versions differ substantially, and the presence of differing facts before the court is itself a matter of dispute between the parties. Although we are reviewing a motion to dismiss, defendants attached to the motion extensive factual material. Plaintiff responded to the motion, arguing in part that the factual material could not be considered. The court below denied summary judgment without giving plaintiff an opportunity to respond to the factual material.[1] Although the court described the motion as one for summary judgment, it did not attempt to resolve the various factual disputes. In view of this confused record, we have taken the facts from plaintiff's complaint. This version is denied by defendants. We have also reviewed the deposition and affidavits submitted by defendants and do not believe that consideration of this material would affect the outcome of the narrow issues before this Court.

At the inspection, the two SRS inspectors indicated that plaintiff's license could be revoked because of the septic system failure, but that the septic system problem would not be an impediment to plaintiff running a registered family day care home. Thereafter, plaintiff applied to be a registered day care home and did not disclose the septic system problem on the application. Defendant Satink again visited plaintiff on May 18, 1984. He stated that plaintiff would never be registered or licensed because she had failed to disclose the septic system fail-

---

[1] Plaintiff argues that the trial court was in error in allowing the motion to dismiss to be turned into a motion for summary judgment without allowing her the "reasonable opportunity to present all material made pertinent to such a motion" required by V.R.C.P. 12(c). Thus, she argues that if the trial court is not affirmed, she should have the opportunity on remand to present such material. Since we affirm the trial court, we do not need to consider this argument.

ure on the application; that she could not receive a hearing on this denial, or, if she did, she could not operate pending the hearing; and, that if she continued to pursue her application, she would be required to put in a mound system at a cost of $7,000 to $10,000. He asked to enter plaintiff's home, and she refused.

As a result of defendant Satink's visit, plaintiff mailed a letter to SRS relinquishing her facility license as of May 25, 1984. The letter was mailed on May 21 or 22, 1984, and received on May 24, 1984. On May 22, 1984, defendant Rolland Gerhart, Director of the Division of Licensing and Regulation of SRS, mailed to plaintiff a notice that her license was revoked as of June 24, 1984, and her application to be registered was denied. The decision was based on four grounds, including the septic system failure and plaintiff's refusal to admit defendant Satink into her home on May 18th.

Plaintiff sued on May 19, 1987, and commenced the action by serving the Deputy Attorney General pursuant to V.R.C.P. 4(d)(2). Service was accepted with a notation that acceptance was for defendants in their official capacity only. The complaint alleged that defendants had violated plaintiff's rights under the United States Constitution[2] and sought relief under the Civil Rights Act, 42 U.S.C. § 1983 (1982), for damages caused by these violations. The complaint further alleged that defendants had violated her rights under the Vermont Constitution[3] and sought damages for these violations. In essence, plaintiff's position is that defendants revoked her day care facility license in retaliation for her opposition to the corporal punishment policy and that they used fraud and deception to induce her to abandon her license and forego her appeal rights.

Defendants answered the complaint and filed their motion to dismiss on three grounds: (1) plaintiff's Civil Rights Act claims are time-barred because they were not brought within the three year period allowed by 12 V.S.A. § 512(4); (2) her claims under

---

[2] Plaintiff alleged that defendants' actions violated her rights to due process and equal protection of the laws under the Fourteenth Amendment, and her rights to free speech and to petition her government under the First Amendment.

[3] She alleged that defendants had violated her property rights under Chapter I, Article 1 of the Vermont Constitution and her right to free speech under Chapter I, Article 13.

the Vermont Constitution are time-barred for the same reason; and (3) defendants are immune from liability in this suit. Defendants attached to the motion the deposition of plaintiff, along with various exhibits, and a number of affidavits. Plaintiff responded, in part, by seeking to amend the complaint to name defendants "in their individual capacities." The trial court granted the motion to amend[4] and denied the motion to dismiss, treating it as a motion for summary judgment. Defendants raise here the same grounds for dismissal that they urged in the trial court, adding that the trial court misallocated the burden of proof on the immunity question.[5]

The first issue deals with the statute of limitations for the Civil Rights Act claims. Defendants allege that the causes of action accrued on May 18, 1984, or earlier, and since the applicable limitation period is three years and plaintiff filed the complaint on May 19, 1987, the action must be dismissed. The trial court agreed that the applicable limitation period is three years but held that the cause of action did not accrue until June 24, 1984, when plaintiff was required to close her day care center.

In *Wilson v. Garcia*, 471 U.S. 261, 276 (1985), the Supreme Court held that the state statute of limitations for personal injury tort actions applied to civil rights actions under 42 U.S.C. § 1983. In Vermont, that limitation period is three years. See 12 V.S.A. § 512(4). Although the applicable limitation period is a matter of state law, the question of when a cause of action accrues for purposes of applying the limitation period is one of

---

[4] In granting the motion to amend, the court rejected defendants' claim that they could not be sued in their individual capacities by amendment when they had been served only in their official capacities. Defendants have not appealed the court's ruling on the motion to amend and it is not before us.

[5] The questions certified to this Court are:

(1) Did the court err in holding that the plaintiff's cause of action accrued on June 24, 1984, rather than on May 18, 1984?

(2) Did the court err in holding that 12 V.S.A. § 511 applies to all actions brought under the Vermont Constitution?

(3) Did the court err in holding that 12 V.S.A. § 5602(1) applies only where the state employee has exercised due care?

(4) Did the court err in holding that the defendant, State of Vermont, bears the burden on summary judgment of establishing its entitlement to sovereign immunity?

federal law. See 2 J. Cook & J. Sobieski, Civil Rights Actions ¶ 4.02, at 4-22.14 (1989). The federal rule is that a cause of action accrues when the plaintiff knew or should have known of the injury that serves as the basis for the action. See, e.g., *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir. 1983).

We agree with defendants that the trial court's selection of the date on which plaintiff's license expired, as the date for accrual of plaintiff's action, is not consistent with the federal accrual rule. In *Delaware State College v. Ricks*, 449 U.S. 250 (1980), the Supreme Court examined when a cause of action accrued under Title VII of the Civil Rights Act of 1964 for purposes of the requirement that an aggrieved person notify the EEOC of his or her claim within 180 days of its accrual. The plaintiff alleged that he had been denied tenure as a college professor because of his race. The plaintiff was notified of the official tenure decision in June of 1984, although the decision in response to plaintiff's administrative appeal did not occur until September, 1984 and plaintiff received a terminal contract allowing him to work until June of 1985. The Court held that the cause of action accrued when the tenure decision was made and communicated to plaintiff and not when the appeal was decided or when plaintiff's employment ended. As to the claim that accrual occurred on the termination of employment, the Court quoted a federal court of appeals decision to the effect that the action accrued when the discrimination occurred and not when its effect became most painful. *Id.* at 258 (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979)).

*Ricks* was followed in *Chardon v. Fernandez*, 454 U.S. 6 (1981) (per curiam), another § 1983 case involving a claim for employment discrimination. Again the Court held that the action accrued when the plaintiffs were officially notified of dismissal and not when the employment terminated. *Id.* at 8.

The time when plaintiff's license expired is comparable to the time when the plaintiffs' employment terminated in *Ricks* and *Chardon*. Plaintiff knew of her injury before her license actually expired. Her cause of action therefore accrued prior to June of 1984.

While we agree that the cause of action accrued prior to June of 1984, we cannot agree that it occurred on May 18, 1984, the day on which defendants rely. The argument for this date is that

it represents the last in-person contact between SRS employees and plaintiff and that plaintiff indicated in her deposition that, based on the representations of defendant Satink, she decided on May 18th to give up her license although she did not actually do so until a few days later.

We do not believe that plaintiff yet knew of her injury on May 18th. While most of her allegations are based on representations of defendant Satink, he is referred to in the documents as a "sanitarian," and there is no indication that he had the power to act with respect to plaintiff's license or her pending applications. At best, his actions and representations could induce others to act with respect to plaintiff's license. The official action occurred days later in the letter signed by defendant Gerhart. Indeed the only reference to defendant Gerhart in the complaint is with respect to the notification letter, and it is undisputed that the letter was mailed and received after May 18, 1984.

■ Nor does plaintiff's decision to give up her license in the future accrue the cause of action when she did not formally do so until days later. We are reluctant to determine an accrual date based upon intent to do an act when the act is not yet done. Not only would such a rule be difficult, if not impossible, to administer, but it ignores the reality that plaintiff could change her intent at any time until she takes action. See *Lendo v. Garrett County Bd. of Educ.*, 820 F.2d 1365, 1367 (4th Cir. 1987) (accrual date should not be based on hindsight reconstruction of cause and effect of particular actions leading up to denial of tenure). Thus, we do not believe plaintiff's injury occurred until she actually withdrew her applications and closed her center. Although there is some dispute about that date, it can be no earlier than May 20, 1984, the date on her letter.[6]

There remains only to be considered defendants' argument that some of plaintiff's claims are time-barred because they are based on events that occurred prior to May of 1984 as set forth in the complaint. We do not read the complaint the same way as defendants do. While there are detailed recitations of factual

---

[6] The letter is dated May 20, 1984. The complaint indicates it was posted on May 22, 1984 although plaintiff indicated in her deposition that it was posted on May 21, 1984.

events that occurred prior to May of 1984, they appear to be part of plaintiff's evidence in support of her theory that defendants took action against her in retaliation for successful opposition to the corporal punishment policy. The injury for all her claims appears to be the loss of her license in 1984.[7] As we discussed above, claims with respect to that injury are not time-barred.

The second issue is posed as a choice between the six-year limitation period of 12 V.S.A. § 511 or the three-year limitation period of 12 V.S.A. § 512(4) for plaintiff's claims based on the Vermont Constitution. Plaintiff, supported by the trial court, argues for the six-year period, and defendants argue for the three-year period. The choice presented is false because plaintiff's action is not time-barred whichever statute applies.

Before addressing the choice, however, it is important to emphasize that defendants concede, for purposes of this appeal, that plaintiff can bring a damage action premised solely on a violation of the Vermont Constitution. Although the United States Supreme Court has ruled that plaintiffs can ground a private damage action against a federal official solely on a violation of certain provisions of the United States Constitution, *Bivens v. Six Unknown Named Federal Narcotics Agents*, 403 U.S. 388, 389 (1971), we have never addressed the question with respect to the Vermont Constitution and do not do so today.

If we follow defendants' argument and apply 12 V.S.A. § 512(4) on the theory that the federal rule of *Wilson v. Garcia* should be applied to actions under the Vermont Constitution, we will apply the statutory proviso "that the cause of action shall be deemed to accrue as of the date of the discovery of the injury." 12 V.S.A. § 512(4). This rule of accrual is essentially the same as the federal rule applied in actions under 42 U.S.C. § 1983. Accordingly, for the reasons stated above with respect

---

[7] In order to argue for a different interpretation of the complaint, defendants note that defendant Gerhart's letter of May 21, 1984, revoking plaintiff's license and denying her applications, specified that plaintiff had a right to a hearing. Thus, defendants argue that plaintiff's due process claim cannot arise from that letter and must arise from some earlier action. Defendants' point goes to the strength of plaintiff's due process claim on the merits and not to when it accrued. There is no indication that plaintiff is claiming damage from some earlier denial of a right to a hearing.

to plaintiff's § 1983 claims, her claims under the Vermont Constitution are not time-barred.

■ The third issue involves defendants' claim to an immunity defense. This claim and its resolution involve difficult and complex issues which are recognized only partially in the briefing and in the opinion below. For this reason, it is necessary to go back to defendants' initial motion in the trial court.

Although defendants characterized their defense as sovereign immunity, they argued that the state was not a person under the Civil Rights Act, 42 U.S.C. § 1983, and that a suit against the defendants Gerhart, Satink and Collier in their official capacity was the equivalent of a suit against the state. The trial court avoided the force of defendants' argument by holding that the state liability exception statute, 12 V.S.A. § 5602(1) (amended as 12 V.S.A. § 5601(e)(1)), did not apply to the case before it because the defendants did not prove they acted while exercising due care. At the same time, as noted above, the trial court allowed the individual defendants to be sued in their individual capacities, and the defendants have not appealed this ruling, at least at this time. The ruling of the trial court on the state liability exception statute has caused the parties to argue whether the trial court's interpretation of the statute was correct and whether the defendants had the burden of proof on the question. While the arguments posed by the parties respond to the trial court decision, they do not address the issues actually before the court as presented by defendants' motion. In short, the case became misdirected down a blind alley which we do not find useful to enter.[8]

■ We start by splitting the case between the § 1983 claims and the Vermont Constitution claims for purposes of the immunity question. As noted below, we do not address whether defendants have an immunity defense to the Vermont Constitution claims.

---

[8] In redirecting the issues in this case, we have gone outside the certified questions. As we stated in *State v. Dreibelbis*, 147 Vt. 98, 99–100, 511 A.2d 307, 308 (1986), the certified questions are for the aid of this Court and we are not limited to the trial judge's view of the case. We will not hesitate to reach issues outside the certified questions where they are fairly raised by the order appealed from. *Id.* at 100, 511 A.2d at 308.

As defendants argued in their motion, § 1983 applies only to actions against persons. In *Will v. Michigan Department of State Police*, 491 U.S. 58, 65–67, 109 S. Ct. 2304, 2308–09 (1989), the United States Supreme Court ruled that a state or a state agency is not a person for purposes of § 1983. The Court went on to hold that a state official sued for damages in his or her official capacity is also not a person for purposes of § 1983. *Id.* at 70–71, 109 S. Ct. at 2311. The effect of *Will* on the case at hand is obvious. The § 1983 claims against SRS must be dismissed because SRS is not a person. The § 1983 claims against defendants Gerhart, Satink and Collier must be dismissed to the extent they were sued in their official capacity. Prior to the amendment to the complaint, there was a question of the capacity in which these defendants were sued. After the amendment, it was clear that the named defendants were sued both as individuals and as officials. To the extent they were sued in their official capacities, the motion to dismiss should have been granted. As to the § 1983 claims against them in their individual capacities, they are persons under § 1983, and we turn to the sovereign immunity question.

The trial court assumed that sovereign immunity is a defense to a § 1983 action brought in state court. This proposition can no longer be maintained after the United States Supreme Court's unanimous decision in *Howlett v. Rose*, — U.S. —, 110 S. Ct. 2430 (1990). The petitioner in *Howlett* was a high school student who brought a § 1983 suit in state court for damages against school officials who allegedly searched his car and suspended him from school in violation of his constitutional rights. The defendants moved to dismiss, asserting that the § 1983 claim was barred by sovereign immunity. *Id.* at —, 110 S. Ct. at 2434. The Court held that the Supremacy Clause does not permit a state law defense of sovereign immunity in a § 1983 action brought in state court where a sovereign immunity defense would not be available had the action been brought in a federal forum. *Id.* at —, 110 S. Ct. at 2443–44. "[A]s to persons that Congress subjected to liability, individual States may not exempt such persons from federal liability by relying on their own common law heritage." *Id.* at —, 110 S. Ct. at 2447.

██ ██   In any event, even under state law, the individual defendants acting in their personal capacities may not benefit from sovereign immunity. In *Libercent v. Aldrich,* 149 Vt. 76, 84, 539 A.2d 981, 985 (1987), this Court held that the state liability and exception statutes have no applicability to claims made against state employees: "Because the terms of §§ 5601 and 5602 refer only to liability of the state, these statutes have no application to claims brought against state officers and employees." The holding of *Libercent* was explained in *Levinsky v. Diamond,* 151 Vt. 178, 183, 559 A.2d 1073, 1078 (1989), as follows: "We reiterate that the defense of sovereign immunity is available in Vermont only as to the state itself . . . ."[9] See also *Curran v. Marcille,* 152 Vt. 247, 248, 565 A.2d 1362, 1363 (1989).

This leaves sovereign immunity as a possible defense only to the Vermont Constitution claims. As noted above, we decline to address this issue although it may eventually appear in the case. Defendants never mentioned the Vermont Constitution claims in asserting that they were protected by sovereign immunity, and the trial court never considered the application of sovereign immunity to claims under the Vermont Constitution. The certified questions do not mention the issue.

We are also influenced by the fact that we have never addressed the question of whether damage actions can be premised directly on violations of the Vermont Constitution. Other states are split on the issue with respect to their constitutions. See *Gay Law Students Ass'n v. Pacific Tel. & Tel.,* 24 Cal. 3d 458, 474–75, 595 P.2d 592, 602, 156 Cal. Rptr. 14, 24 (1979); *Figueroa v. State,* 61 Haw. 369, 381–82, 604 P.2d 1198, 1205 (1979); *Smith v. Department of Public Health,* 428 Mich. 540, 612–36, 410 N.W.2d 749, 781–92 (1987). See generally Friesen, *Recovering Damages for State Bill of Rights Claims,* 63 Tex. L. Rev. 1269, 1276–80 (1985). We are reluctant to decide whether a particular defense exists before deciding whether plaintiff has

---

[9] *Levinsky* discusses in detail the related defense of official immunity which is available in civil rights actions. See 151 Vt. at 192–95, 559 A.2d at 1083–85. Defendants have not raised official immunity in their motion to dismiss or in this interlocutory appeal. Accordingly, we do not treat that defense.

valid claims. We also note that the question of whether sovereign immunity should be a defense to such claims is itself complex. See Wolcher, *Sovereign Immunity and the Supremacy Clause: Damages Against States in Their Own Courts for Constitutional Violations*, 69 Calif. L. Rev. 189 (1981).

*The decision of the trial court that plaintiff's claims are not barred by the statute of limitations is affirmed. The decision of the trial court denying the motion for summary judgment based on sovereign immunity is affirmed except that the § 1983 claims against defendant, Vermont Department of Social and Rehabilitation Services, are dismissed and the § 1983 claims against the remaining defendants in their official capacities are dismissed.*