**Linda MORSE, Plaintiff,**

v.

**UNIVERSITY OF VERMONT,
Defendant.**

**Civ. A. No. 90–103.**

United States District Court,
D. Vermont.

Sept. 11, 1991.

As Amended Oct. 4, 1991.

Jane C. Watson, Bauer, Gravel & Watson, Burlington, Vt., for plaintiff.

Robert L. Sand, Dinse, Erdmann & Clapp, Burlington, Vt., for defendant.

## OPINION AND ORDER

PARKER, District Judge.

On March 30, 1990, plaintiff Linda Morse filed a complaint in Vermont Superior Court alleging that the University of Vermont (UVM) refused to accommodate her handicap and failed to grant her a masters degree in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988), and 9 V.S.A. § 4502(c) (1990). UVM removed this action to this court pursuant to 28 U.S.C. §§ 1331, 1441–1452; Fed.R.Civ.P. 81(c).

Plaintiff's complaint alleges that she is handicapped by chronic thyroiditis/hypothyroidism, which manifests itself with the following symptoms: apathy, inertia, slow movement, difficulty with concentration, edema, fatigue and low resistance to disease. These symptoms make it difficult for her to set goals, handle stress, read and speak quickly, plan, remain attentive and work with stamina. The accommodation plaintiff seeks for her handicap is a waiver of time limitations for obtaining her degree, either by UVM rescinding a dismissal from the program in 1982, or by readmitting her with a transfer of all previously earned credits.

UVM moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. UVM asserts that this action is governed by Vermont's three year statute of limitations for personal injury (12 V.S.A. § 512(4)) and is time-barred because plaintiff failed to file suit within the applicable limitations period. In the alternative, UVM asserts that Ms. Morse is precluded by laches and waiver from pursuing her claims.

In opposition to UVM's motion, plaintiff makes two arguments. First, that the applicable statute of limitations for the federal and state discrimination claims is that which governs civil actions, 12 V.S.A. § 511 (six years). Second, that the discriminatory act which commenced the applicable limitations period is later than the date designated by UVM. Therefore, under either the three year statute of limitations or the six year statute of limitations, plaintiff's claim is not time-barred.

The court finds that plaintiff's claim is time-barred and grants summary judgment in favor of UVM. It is, therefore, unnecessary to reach the laches or waiver arguments.

## FACTS

The undisputed material facts are as follows. Ms. Morse suffers from a medical disability known as hypothyroidism, which she alleges is a handicap under federal and state antidiscrimination statutes. During the summer term of 1975, Linda Morse commenced attending graduate courses at UVM. The College of Education and Social Services at UVM accepted her as a full-time, Masters of Education candidate for the 1977 Spring semester in the field of Counseling and Guidance.[1] UVM maintains a five-year time limit within which

---

1. UVM's statement of material facts says plaintiff was accepted into the UVM Masters of Education in counseling program for the spring semester of 1976. However, plaintiff's application for admission and acceptance letter make it clear that plaintiff did not matriculate until January 1977. Exhibits B and C to Plaintiff's Response to Defendant's Motion for Summary Judgment. Plaintiff's attorney, points out in a letter to Vice Provost Francis, that Ms. Morse was actually admitted in the spring semester of 1977. Exhibit HH to Plaintiff's Response to Defendant's Motion for Summary Judgment. Plaintiff received her termination letter from the M.Ed. in Counseling program on October 7, 1982. UVM's policy is that you have *five* years to complete the Master's degree. If plaintiff is correct as to her matriculation date, the termination letter was premature. However, plaintiff does not plead this as an issue, and if she had it would be subject to the same analysis as the other issues which were pled.

degree candidates must complete their course work to earn a Masters degree. On October 7, 1982, Assistant Dean Ann M. Spearing informed Ms. Morse that she was terminated from her degree program, because the five year time limit for completion had expired.

During the next two years, Ms. Morse sought reinstatement to the program. In the summer of 1983, she finished her last course for the M.Ed. program and had a 3.0 grade point average. On May 1, 1984, Ms. Morse submitted an application for admission for an M.Ed. or M.S. degree in Counseling. Plaintiff's Response to UVM's Motion for Summary Judgment (hereinafter "Plaintiff's"), Exhibit J. On May 15, 1984, the Graduate Deans Office offered to readmit Ms. Morse to the Master of Science in Counseling program if she accepted restrictions with respect to credit transfers and program supervision. The conditions were propounded after discussions and correspondence between UVM faculty, administrative personnel and Ms. Morse.[2] On June 6, 1984, Professor Ducharme wrote a letter to Ms. Morse setting forth "the definitive statement of conditions for readmission." The conditions of readmission were that Ms. Morse would be required to take six courses, for a total of eighteen credits, beyond those already taken prior to her request for admission. A course taken in the Spring of 1984 would count as one of the six, leaving Ms. Morse with five courses to complete. Ms. Morse would be closely supervised by an advisor, who would help plan her remaining five courses.

Also, two professors in the O.C.F.S. Department would monitor Ms. Morse's work to assure that Ms. Morse achieve a professional level of "communication skills, self-confidence, personal insight, judgment, sensitivity and other qualities," as is required for a M.S. in Counseling degree.[3]

The rationale for these conditions of readmission was that under UVM Graduate College policy, nine credits is the maximum number of credit hours which may be transferred and constitute part of a degree program for a master's candidate; a course in which a grade lower than 3.0 was received may not be transferred; and a course taken more than seven years prior to the date of degree completion may not be considered part of a master's degree program. Because Ms. Morse was a prior candidate for the M.Ed. in Counseling in the Department of O.C.F.S., UVM was willing to make an exception to UVM's usual policy by considering a departmental recommendation for validation of eight courses, totaling 24 credit hours, that Ms. Morse had completed while she was a M.Ed. candidate.[4] The requirement that she still complete fifteen credits was necessary for Ms. Morse to exhibit that, despite her handicap, she was "qualified" professionally to counsel others, and therefore was deserving of a masters degree.

On October 4, 1984, Dean Spearing wrote Ms. Morse because UVM had not received a response to the offer of readmission. Dean Spearing informed Ms. Morse that unless she accepted the offer of readmis-

---

2. *See*, Plaintiff's Exhibit G—Internal UVM Memo, November 9, 1983, from Dr. Spearing to Professor Zander Ponzo in the Department of Organizational Counseling and Foundational Studies (O.C.F.S.); Plaintiff's Exhibit S—October 4, 1984 letter from Associate Dean Spearing to Ms. Morse; Plaintiff's X, Enclosure C—June 6, 1984 letter from Chairperson O.C.F.S., Edward Ducharme to Ms. Morse; Plaintiff's Exhibit U—October 16, 1984 letter from Associate Dean Spearing to Ms. Morse.

3. Ms. Morse's June 4, 1991 affidavit states that the conditions of readmission were that she had to take the 18 credits by January, 1986. The only time limit requirement for completion of the conditions of readmission that was mentioned in plaintiff's exhibits was the fall se-

mester of 1985, (which would be January *1986.*) *See* Plaintiff's Exhibit G, Memorandum form Professor Zander to Dean Spearing on November 9, 1983. This time limit for completion is notably absent from Ducharme's June 6, 1984 letter. *See* Plaintiff's Exhibit Q. Apparently, in its final denial of Ms. Morse's appeal on October 24, 1988, UVM understood their offer of readmission to include a time limit for completion of the 18 credits until the end of the fall semester of 1985 (January, 1986). While a dispute of fact may exist with regard to this issue, it is not material to the decision contained in this opinion.

4. Sometime after Ms. Morse received her termination letter, the M.Ed. in Counseling program was discontinued.

sion in writing by October 15, 1984, UVM would conclude that she had declined the offer. On October 15, 1984, Ms. Morse wrote Dean Spearing and rejected the terms of readmission. On October 16, 1984, Dean Spearing wrote Ms. Morse acknowledging the rejection.

On November 13, 1984, Ms. Morse appealed UVM's initial decision to "dismiss" her in October, 1982. The letter also appealed UVM's decision on the number of credits required to complete an M.S. if readmitted to the program. Plaintiff's Exhibit W. On December 12, 1984 the Executive Committee of the Graduate College denied Ms. Morse's appeal. Plaintiff's Exhibit X. On January 14, Ms. Morse met with Robert Arns, Vice President for Academic Affairs, to appeal the decision of the Executive Committee; V.P. Arns denied her appeal by letter on January 24, 1985. Plaintiff's Exhibit Y. Ms. Morse met with Dr. Arns on February 5, 1985, who informed her that she could request reconsideration of his decision if she did so in writing; Dr. Arns sent Ms. Morse a written confirmation of the meeting the following day. Plaintiff's Exhibit Z. Plaintiff contends that Dr. Arns, during their meetings emphasized "performance" or grade point average, taking all required courses and judgments by the counseling Department of professional competence. Thereafter, Ms. Morse asked on two separate occasions to meet with Dr. Arns with her attorney present to help focus her appeal. In response to Ms. Morse's telephone request on July 16, 1985, to arrange a meeting, Interim Vice President for Academic Affairs, Gerald P. Francis, wrote Ms. Morse that day requesting that she first complete her written appeal. Plaintiff's Exhibit CC. When Ms. Morse called again on September 9, 1985, it was discovered that she never received the July 16, 1985 letter; a copy of the letter was sent to her at that time. Plaintiff's Exhibit EE.

On June 17, 1987, Ms. Morse stopped by Dr. Francis' office to speak about her appeal. The following year, Ms. Morse still expressed an interest in receiving a masters degree, and on May 16, 1988, Dr. Francis wrote Ms. Morse to remind her of the reconsideration procedure outlined by Dr. Arns decision, and to inform her that the deadline for reconsideration was June 30, 1988. On June 27, 1988, Ms. Morse submitted a written appeal to Vice Provost Francis. Plaintiff's Exhibit GG. On June 30, 1988, Ms. Morse's attorney also filed an appeal. Plaintiff's Exhibit HH. The appeal asked for a waiver of time limits for the completion of the graduate degree program as a reasonable accommodation to Ms. Morse's handicap. At the time of the appeal, Ms. Morse had accumulated 48 credits since 1977 and had obtained a 3.0 grade point average, which, had she not been terminated or given any time requirements for completion, would fulfill the academic requirements of a masters degree. UVM consulted with medical experts over Ms. Morse's hypothyroidism, and granted her an extension of time for the submission of additional medical information. On October 24, 1988, UVM denied Ms. Morse's appeal to reconsider her dismissal from the degree program; UVM concluded that it had already reasonably accommodated Ms. Morse for her hypothyroidism through its offer of readmission. Plaintiff's Exhibit LL.

## DISCUSSION

Summary judgment should be rendered for the moving party if the Court finds there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any material factual issues that must be tried. The court must draw all reasonable inferences in favor of the non-moving party and only grant summary judgment for the moving party if no reasonable trier of fact could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–252, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986).

## I. STATUTE OF LIMITATIONS

There are two issues that must be resolved with respect to the statute of limitations: which is the governing statute of limitations and at what moment did the period began to run? These issues must be addressed both for the federal anti-discrimination claim under section 504 of the Rehabilitation Act, 42 U.S.C. § 794, and the state anti-discrimination claim, 9 V.S.A. § 4502.

Plaintiff argues that the applicable statute of limitations for the federal and state discrimination claims is that governing civil actions, 12 V.S.A. § 511, which is six years. Plaintiff also urges the court to adopt a "continuing violations" theory in which the last discriminatory act was on October 24, 1988, when Vice Provost Francis denied Ms. Morse's request to reconsider her appeal. Alternatively, plaintiff argues that if the court finds a continuing violation did not exist, the time when the discriminatory act occurred is October 16, 1984, when UVM acknowledged Ms. Morse's rejection of the offer of readmission.

Defendant argues that the Vermont statute of limitations applicable to personal injuries, 12 V.S.A. § 512(4) applies to the federal and state anti-discrimination claims. Since Ms. Morse filed suit on May 30, 1990 and the limitations period is three years from the alleged discriminatory act, the act must have occurred no earlier than May 30, 1987. Defendant maintains that the alleged discriminatory act was UVM's October 7, 1982 letter terminating Ms. Morse's degree program. At the latest, UVM's withdrawal of its offer of readmission on October 16, 1984 began the limitations period. Hence, UVM argues that plaintiff is time barred from bringing her claim.

This court holds that the Vermont three year statute of limitations for personal injury claims is applicable to both the federal and state anti-discrimination claims. The undisputed facts do not support a "continuing violation" theory. The latest date on which a discriminatory act occurred is October 16, 1984, the date of UVM's withdrawal of its offer of readmission.

### A. State Statute of Limitations for Personal Injury Applies to § 504 of Rehabilitation Act Claim

The Rehabilitation Act, 29 U.S.C. § 794, does not contain a provision specifying a controlling statute of limitations. The Supreme Court has not yet addressed a specific statute of limitations which controls a claim under 29 U.S.C. § 794. The Supreme Court has held, however, that where a federal civil rights statute does not contain a statute of limitations, "federal courts should select the most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (quoting *Wilson v. Garcia*, 471 U.S. 261, 266–68, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985); *Runyon v. McCrary*, 427 U.S. 160, 180–82, 96 S.Ct. 2586, 2599–2600, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975)). *See also Board of Regents v. Tomanio*, 446 U.S. 478, 484–85, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1979). Neither the Supreme Court nor the Second Circuit has determined a specific state statute of limitations that is analogous to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. However, both courts have held that discrimination claims under 42 U.S.C. §§ 1981 and 1983 are most analogous to personal injury claims under state law, and therefore have applied the corresponding state statute of limitations for personal injuries. *See Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (suits brought under 42 U.S.C. § 1983 should be governed by the state statute of limitations for personal injury actions); *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (Court extends *Wilson* analysis to claims under 42 U.S.C. § 1981, specifically rejecting argument that six year statute of limitations for interference with contractual relationships would be more appropriate); *Okure v. Owens*, 816 F.2d 45 (2d Cir.1987), *aff'd*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (Second Circuit holds proper limitation to apply to all section 1983 claims in New York is

three years, based on the state's general personal injury statute).

In *Wilson*, the Supreme Court made three holdings. First, the characterization of § 1983 claims for purposes of choosing an appropriate statute of limitations is a matter of federal law; only the length of the limitation period is governed by state law. *Wilson*, 471 U.S. at 269, 105 S.Ct. at 1943. Second, a single limitations period should be chosen to govern all the diverse claims that fall under § 1983 rather than selecting a particular statute of limitations each time to correspond to the particular facts or legal theory of each claim. *Id.* at 269–70, 105 S.Ct. at 1943. Third, the Court concluded that § 1983 claims are best characterized as personal injury actions. *Id.* at 280, 105 S.Ct. at 1949. In *Goodman*, the Supreme Court said that § 1981 actions should also be characterized as personal injury actions for purposes of borrowing an appropriate state statute of limitations. Even though § 1981 speaks of economic rights, specifically, the right to make and enforce contracts, the Court found that § 1981's focus was broader than contractual rights. The emphasis of § 1981 is on the *personal right* not only to contract, but also to sue, to testify, to be afforded equal rights under all laws for the security of persons and property, and to be subject to like punishments. Therefore, the section provides that the enjoyment of these rights shall not be interfered with on racial grounds. "It [42 U.S.C. § 1981] is thus part of a federal law barring racial discrimination, which, ... is a fundamental injury to the individual rights of a person." *Goodman*, 482 U.S. at 661, 107 S.Ct. at 2621.

While the Second Circuit has not been squarely presented with the issue of what statute of limitations should be borrowed for Section 504 claims, it has indicated in dicta that it will likely apply the state statute of limitations for personal injury actions for Section 504 claims:

> Whether this analysis [that used in *Wilson* and *Goodman*] should be extended beyond the Reconstruction Acts and laws forbidding racial discrimination to statutes like § 504 of the Rehabilitation Act

of 1973, remains an open question. *Goodman*, however, in characterizing discrimination claims as a "fundamental injury to the individual rights of a person" and thus akin to personal injury actions, seems to suggest an affirmative answer.

*Fleming v. New York Univ.*, 865 F.2d 478, 491 n. 1 (2d Cir.1989) (citation omitted). *See also McGuire v. Switzer*, 734 F.Supp. 99, 104 n. 2 (S.D.N.Y.1990) ("[T]he Second Circuit interpreted the Supreme Court's ruling in *Goodman v. Lukens Steel Co.* as indicating that the statute of limitations applicable to personal injury actions in New York should apply to claims under § 504.").

Moreover, the trend in the lower courts is to apply the state's personal injury statute of limitations to Rehabilitation Act claims. While plaintiff is correct that some federal courts have applied the contract statute of limitations to employment discrimination cases, the cases plaintiff cites all predate *Wilson* and *Goodman*. *See* Plaintiff's at 12. Plaintiff also asserts that the Second Circuit has rejected a tort statute of limitations when the action is one for recovery upon liability arising from a statutory violation. *Id.* She again cites cases prior to *Wilson*. Moreover, in *Fleming*, despite plaintiff's failure to challenge the lower court's use of the New York statute of limitations for statutory claims, the Second Circuit inserted the above footnote doubting whether the statutory statute of limitations was the appropriate limitations period to apply to a section 504 claim. Also the Supreme Court has rejected the statutory statute of limitations for § 1983 claims: "The relative scarcity of statutory claims when § 1983 was enacted makes it unlikely that Congress would have intended to apply the catchall periods of limitations for statutory claims that were later enacted by many States." *Wilson*, 471 U.S. at 278, 105 S.Ct. at 1948.

Contrary to plaintiff's assertions,

> in growing numbers courts have looked to analogous discrimination actions such as those brought under 42 U.S.C. § 1981 and § 1983, and have applied the state's

personal injury statute of limitations to Rehabilitation Act claims. *Doe v. Southeastern Univ.*, 732 F.Supp. 7, 9 (D.D.C.1990) (collecting cases from several jurisdictions). *See also Bush v. Commonwealth Edison Co.*, 732 F.Supp. 895, 900 (N.D.Ill.1990) (following *Goodman* and *Wilson*, court finds applicable statute of limitations for Rehabilitation Act claim should be the Illinois statute of limitations for personal injury actions).

Following the Second Circuit's indication and the trend in the law, this Court holds that the Vermont three year personal injury statute of limitations applies to Ms. Morse's § 504 claim. 12 V.S.A. § 512(4) (1973 & Supp.1990).[5]

### B. *State Statute of Limitations for Personal Injury Applies to State Anti–Discrimination Claim*

■ The Vermont Handicapped Anti-discrimination statute, like its federal counterpart, does not contain a statute of limitations provision. Hence, this Court must determine which statute of limitations the Vermont Supreme Court would apply. Again, the plaintiff's position is that the statute of limitations for general civil actions, 12 V.S.A. § 511, should be used, while the defendant believes the limitations period for personal injuries is most appropriate. The Vermont Supreme Court has held that "the nature of the harm done is the determining factor in construing the two limitations provision [§ 511 and § 512], rather than the plaintiff's characterization of the action." *Stevers v. E.T. & H.K. Ide Co.*, 148 Vt. 12, 13, 527 A.2d 658, 659 (1976); *see also Fitzgerald v. Congleton*, 155 Vt. 283, 583 A.2d 595, 598–99 (1990); *Kinney v. Goodyear Tire & Rubber Co.*, 134 Vt. 571, 574–76, 367 A.2d 677, 680 (1976). UVM argues that the Vermont Supreme Court in *Shields v. Gerhart*, 155 Vt. 141, 582 A.2d 153 (1990), chose the state statute of limitations for personal injury,

12 V.S.A. § 512(4), rather than § 511 as the appropriate limitations period for state constitutional claims. UVM then argues that the nature of an injury arising from violations of constitutional rights are substantially indistinguishable from injuries arising from violations of statutory civil rights. While this argument is persuasive, the Vermont Supreme Court in *Shields* never reached the issue of whether § 511 or § 512(4) applied to the claims under the Vermont Constitution because the "plaintiff's action [was] not time-barred whichever statute applie[d]." *Id.*, 582 A.2d at 158.

This court believes the Vermont Supreme Court would follow the reasoning in *Wilson* and *Goodman* and would characterize a claim under 9 V.S.A. § 4502 as one for personal injury. Vermont civil rights statutes are patterned after federal civil rights statutes. In fact, the Vermont legislature recently amended 9 V.S.A. § 4501–4508 and stated that its purpose in doing so was "to revise the housing discrimination laws to comply with the provisions of the Federal Fair Housing Act as amended in 1988." An Act Relating to Housing Discrimination and Facilities for the Handicapped, 1989, No. 89, § 9. The District Court of Vermont followed the standards and burdens of proof applicable under Title VII employment discrimination cases as set forth by the United States Supreme Court in a claim under the Vermont Fair Employment Practices Act, 21 V.S.A. § 495. *Cobb v. Dufresne–Henry Inc.*, 603 F.Supp. 1048, 1053 (D.Vt.1985). This Court believes the Vermont Supreme Court would do the same for a claim under the Vermont Anti–Discrimination Against the Handicapped Act, 9 V.S.A. § 4502.

### C. *Plaintiff's Federal Cause of Action Accrued Upon Denial of Readmission Request*

■ "Federal law governs the question of when a federal claim accrues, even if a

---

**5.** The Vermont person injury statute of limitations, 12 V.S.A. § 512 states in pertinent part:

Actions for the following causes shall be commenced within three years after the cause of action accrues, and not after:

(4) Except as otherwise provided in this chapter, injuries to the person suffered by the act or default of another person, provided that the cause of action shall be deemed to accrue as of the date of the discovery of the injury. . . .

state statute of limitations is to be applied." *Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir.1987). Under federal principles, a claim accrues when the plaintiff "knows or has reason to know" of the injury that is the basis of the action. *Id.* (citing *Pauk v. Bd. of Trustees of City Univ. of New York*, 654 F.2d 856, 859 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982) (§ 1983 action for denial of tenure)). Moreover, the Supreme Court in *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (§ 1983 suit for termination of employment) and in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (Title VII case for denial of tenure), held that the proper focus for determining when an action accrues in discrimination cases is "on the time of the *discriminatory act*, not upon the time at which the *consequences* of the act become painful." *Chardon*, 454 U.S. at 8, 102 S.Ct. at 29. *Ricks* was a Title VII case where the plaintiff alleged that he was racially discriminated against when he was denied tenure. The Supreme Court held that the statute of limitations began to run at the time the tenure decision was made and communicated to Ricks, not the final date of employment. *Chardon* involved a § 1983 suit for termination of employment in which the Supreme Court held that the applicable limitations period began to run when notice of termination was given, and not on the date when the employment was actually terminated. In *Ricks*, the Supreme Court emphasized that once a formal decision is made the pendency of a grievance complaining of the decision or some other collateral review process does not toll the running of the limitations periods. 449 U.S. at 261, 101 S.Ct. at 505. *See also O'Malley v. GTE Service Corp.*, 758 F.2d 818, 820 (2d Cir.1985) (citing *Ricks* and *Chardon* ).

UVM asserts that Ms. Morse allegedly suffered from two discrete instances of discrimination. The first was when she received the October 7, 1982, termination

letter and learned that UVM would not grant her an M.Ed. degree. The second was UVM's letter of October 16, 1984, advising Ms. Morse that she would not be considered for readmission to UVM's graduate level counseling program. In the 1984 letter, UVM made it clear that by rejecting the "definitive statement of conditions for readmission," Ms. Morse had rejected its offer of readmission. Both letters make UVM's official position crystal clear. Ms. Morse knew of these decisions as soon as she received these letters and it was at this point the statutes of limitations began to run. Similar to *Ricks*, the fact that UVM entertained appeals did not toll the running of the statutes.

Plaintiff asserts, however, that in this case we are not dealing with a discrete instances of discrimination, but rather a continuous practice and policy of discrimination (a "continuing violation"). Therefore, she contends that the commencement of the statute of limitations period was delayed until the last discriminatory act in furtherance of it. *Cook v. Pan American World Airways, Inc.*, 771 F.2d 635, 646 (2d Cir.1985), *cert. denied*, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986) (Title VII claim for discriminatory seniority system); *Guardians Ass'n of the New York City Police Dep't, Inc. v. Civil Service Comm'n of the City of New York*, 633 F.2d 232, 249 (2d Cir.1980) (Title VII claim for discriminatory hiring practice); *Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 275 (2d Cir. 1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982) (Title VII claim for discriminatory hiring practices); *Acha v. Beame*, 570 F.2d 57, 65 (2d Cir.1978) (Title VII claim for discriminatory hiring policy). Where an illegal policy is maintained, relief for injuries sustained even before the beginning of the limitations period is appropriate. *Acha*, 570 F.2d at 65. According to Ms. Morse, the last discriminatory act was either the October 1984 letter rejecting readmission or the October 1988 letter denying her appeal.[6]

6. Since this court has held that the Vermont three year personal injury statute of limitations applies, only the October 1988 date is viable to keep plaintiff's claim alive.

In addition, plaintiff asserts that if the court rejects the continuing violations argument, that there is a third instance of discrimination in 1988. By 1988, she claims she had completed forty-two credit hours at a 3.0 grade point average, with the allowance of a time extension. Yet, UVM still refused to grant her a masters degree and on October 24, 1988, UVM rejected all of plaintiff's grounds for receipt of her degree.

To allege a continuing violation, the complaint must allege a *present* and ongoing violation of the law. For example, in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the Supreme Court held that the airline's unwillingness to credit Evans with back seniority was not a violation of Title VII because the plaintiff failed to allege a present violation. The case involved an airline stewardess who was discharged in 1968 because of the airline's no-marriage policy. She was rehired in 1972, after the policy was dropped, but United refused to credit her with seniority for her former service. She sued claiming that the effect of the seniority system is to perpetuate the past discrimination. The Supreme Court found that plaintiff had foregone her claim of discrimination for the forced resignation by failing to timely file a claim. Since the seniority system was neutral and did not discriminate on the basis of sex or race, the Supreme Court rejected Evan's contention that a continuing violation had been demonstrated. "[T]he emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." 431 U.S. at 558, 97 S.Ct. at 1889. Similarly the Supreme Court failed to find a continuing violation in *Ricks* because the plaintiff's complaint only alleged discrimination in the denial of tenure and not discrimination in his termination of employment.

Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination. If Ricks intended to complain of a discriminatory discharge, he should have identified the alleged discriminatory acts that continued until, or occurred at the time of, the actual termination of his employment. But the complaint alleges no such facts.

*Ricks,* 449 U.S. at 257, 101 S.Ct. at 504.

The issue, therefore is whether Ms. Morse's claim is a continuing violation or merely one involving continuing effects from past discriminatory acts. Her complaint alleges that UVM discriminated against her "by refusing to grant to her the masters degree for which she had completed the requisite number of credit hours and attained the requisite average grade...." Complaint ¶ 6. The accommodation she seeks for her handicap is a waiver of time limitations for obtaining her graduate degree, whether this is done by rescinding her dismissal in 1982 or readmitting her with transfer of all her previous credits. Arguably, UVM refused to grant her a degree up until her last appeal. Ms. Morse also contends that UVM never informed her that it was useless to enroll in courses for the purpose of using them toward her degree and that Vice President Arns actually encouraged her to take courses and demonstrate "performance." Plaintiff's at 7 and Plaintiff's Response to Defendant's Supplemental Memorandum in Support of Motion for Summary Judgment at 2.

While it is true that UVM continues to refuse to grant Ms. Morse her degree, the fact that Ms. Morse continued to take courses and pursued an appeal process does not make the violation a continuing one. UVM has no "policy" that discriminates against Ms. Morse. In fact, UVM bent its policies and tried to accommodate Ms. Morse's handicap when it offered Ms. Morse readmission with the recognition of a greater than usual number of previously earned courses.

The Court's holding in *Ricks* that Ricks' continuing employment after the tenure decision did not prolong the life of his cause of action for employment discrimination applies here. Ms. Morse's continuing to take courses at UVM while pursuing her appeals did not prolong her cause of action. Unfortunately, her continuing enrollment

in classes only made the effects of the earlier decisions by UVM more painful when her appeal was finally denied.

Furthermore, UVM's refusal to grant Ms. Morse her degree in 1988, when she had completed the requisite course hours and grade point average notwithstanding a time extension is not a separate instance of violation. Again this was just a continuing impact of UVM's alleged discriminatory act in October 1984.

The statute of limitations began to run against Ms. Morse's first plausible claim for discrimination when she learned UVM had terminated her on October 7, 1982. Her second plausible claim began to accrue when she received the October 16, 1984, letter advising her that she would no longer be considered for readmission. Since the limitations period is three years, and Ms. Morse did not file this action until March 30, 1990, both claims are time-barred.

D. *Plaintiff's State Cause of Action Accrued at the Same Time as her Federal Claim*

The Vermont Supreme court has not addressed the issue of when a claim would accrue under the Handicapped Anti-discrimination statute, 9 V.S.A. § 4502(c). This court has already held that the statute of limitations for personal injury, 12 V.S.A. § 512(4), applies to the state claim. 12 V.S.A. § 512(4) provides a rule of accrual: "the cause of action shall be deemed to accrue as of the date of the discovery of the injury." "This rule of accrual is essentially the same as the federal rule applied in actions under 42 U.S.C. § 1983." *Shields v. Gerhart*, 155 Vt. 141, 582 A.2d 153 (1990). As stated above, the federal cause of action accrued when the plaintiff knew or should have known of the injury that serves as the basis for the action, which is no different than when the plaintiff "discovers" the injury. Hence, any state anti-discrimination claims Ms. Morse may have had for the October 7, 1982 termination or the October 16, 1984 refusal to readmit are time-barred as were her federal anti-discrimination claims.

## CONCLUSION

This Court finds that there is no genuine issue as to any material fact concerning the applicability of the statute of limitations to plaintiff's claims that UVM discriminated against her due to her handicap. As a matter of law, plaintiff is barred from bringing her claims by the applicable statutes of limitations. Therefore, defendant's summary judgment motion is GRANTED.