Michael S. GALVIN, of the Town of
Castleton, County of Rutland, and
State of Vermont

v.

STATE OF VERMONT, a Sovereign
State of the United States
of America

and

Vermont Department of Public Safety,
a Statutorily created Agency of the
State of Vermont.

Civ. No. 83–460.

United States District Court,
D. Vermont.

Nov. 9, 1984.

Theodore A. Parisi, Jr., Parisi & Burke, Castleton, Vt., for plaintiff.

Brooke Pearson, Legal Counsel, State of Vt., Dept. of Public Safety, Waterbury, Vt., for defendant.

## MEMORANDUM DECISION AND ORDER

BILLINGS, District Judge.

## I. INTRODUCTION

Plaintiff was forced to retire as a member of the Vermont State Police because of his age. Plaintiff claims the State's mandatory retirement age of 55 for state police officers is not a bona fide occupational qualification (BFOQ) and, therefore, constitutes a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(d). Plaintiff also claims that the state's mandatory retirement age is arbitrary and capricious and, thus, violates his rights both under the Fourteenth Amendment of the United States Constitution and under Chapter 1, Articles 7 and 9, of the Vermont Constitution.

This matter came before the Court on defendants' motion for summary judgment. As grounds for the motion, defendants maintain that: (1) Plaintiff's claim under the ADEA is time-barred; (2) the State's mandatory retirement age for police officers is rationally related to the goal it seeks to achieve; and (3) the case law under the relevant provisions of the Vermont Constitution is uncertain and, therefore, the Court should abstain from deciding the issue. In support of the motion, defendants submitted the deposition of the plaintiff taken on February 14, 1984.

■ At the outset, we note that on a motion for summary judgment the Court does not sit as a trier of fact; rather our role is to examine the pleadings, affidavits and evidence solely to determine whether there are any genuine issues of fact. *Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238 (2d Cir.1984). The burden is on the movant to "demonstrate the absence of any material factual issue genuinely in dispute." *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975). "Not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy as to the inferences to be drawn from them." *Schwabenbauer v. Board of Education*, 667 F.2d 305, 313 (2d Cir.1981). In determining whether there is a genuine factual issue, the Court must view all reasonable inferences in a light most favorable to the non-movant. *Equal Opportunity Employment Commission v. Home Insurance Co.*, 672 F.2d 252, 257 (2d Cir.1982). With this standard in mind, the Court sets forth the following undisputed facts.

## II. FACTS

Plaintiff Michael Galvin first became employed by the Vermont State Police in January of 1957. Deposition at 3. He worked continuously for the state police until his mandatory retirement on or about December 31, 1981. Complaint at par. 4. Plaintiff was forced to retire at that time because he reached the state's mandatory retirement age of 55 on December 26, 1981. Deposition at 4. At the time of his retirement, plaintiff was serving as a training officer in Montpelier, Vermont. Deposition at 5. There, he was involved in the administration and instruction of training exercises for state police officers.

When plaintiff first became a trooper, the state's mandatory retirement age for state police officers was 65. Plaintiff re-

calls that the mandatory retirement age was changed to age 55 some time in the early 1970's. Deposition at 13. *See also* 3 V.S.A. § 455(a)(13). Sometime in 1975, 1976 or 1977 plaintiff became aware of a federal law prohibiting age discrimination and at that time believed the federal law permitted employees to work to an age in excess of 55. Deposition at 18–19.

In September of 1983, plaintiff received notice that a meeting of retired troopers was going to be held in Montpelier. The purpose of the meeting was to discuss the possibility that the mandatory retirement age of 55 imposed by state law on state police officers was in violation of federal law. Plaintiff attended the meeting and, on or about September 6, 1983, filed a claim with the EEOC. Deposition at 24. Plaintiff had earlier realized there might have been a conflict between state and federal law but he never intended to file any charges until he was persuaded to do so as a result of the Montpelier meeting. Deposition at 27, 30.

Plaintiff does not recall seeing any notices about discrimination laws at any state offices while he was employed; nor does he recall seeing such notices at the unemployment office he visited after his retirement. Deposition at 51. At the hearing, defendants conceded that no such notices were posted.

The plaintiff was aware, prior to the Montpelier meeting, that the EEOC was available to receive complaints of age discrimination, but he cannot remember precisely when he became aware of that fact. Deposition at 60. Plaintiff also recalls reading a newspaper article in March of 1983 regarding some fish and game wardens who sued the State of Wyoming claiming the state's mandatory retirement age was discriminatory. Deposition at 54.

### III.  DISCUSSION

#### A.  *The ADEA claim*

As, with any statute of limitations claim, the first question is: which limitation period applies? The ADEA creates a statutory right to be free from age discrimination. 29 U.S.C. § 623(a). However, the Act re-

quires that certain administrative steps be followed before a claimant may commence a private suit. A claimant must file notice with the EEOC within 180 days after the alleged violation or, if pursuant to state law a state agency has been authorized or established to guard against age discrimination, such notice must be filed within 300 days from the date of the alleged violation. 29 U.S.C. §§ 626(d), 633(b). The purpose of the 300–day filing period is to afford state agencies time to investigate claims, as provided in § 633(b).

■   Thus, we must initially determine whether Vermont is a so-called "deferral state" under the terms of Sec. 633(b). The test for determining whether a state is a deferral state is two-fold: 1) the state must have a law prohibiting age discrimination in employment, and 2) there must be a state agency authorized to seek relief for individuals suffering age discrimination. *Simpson v. Whirlpool Corp.* 604 F.2d 997, 999 (6th Cir.1979).

Vermont's Fair Employment Practices Act (FEPA), 21 V.S.A. § 495(a) (Supp.1984), expressly prohibits age discrimination in employment. Section 495b(a) authorizes the state attorney general to enforce the provisions of the Act. That section states in relevant part:

> The attorney general or a state's attorney may enforce the provisions of this subchapter by restraining prohibited acts, seeking civil penalties, obtaining assures of discontinuance and conducting civil investigations ....

21 S.V.S. § 495b(a). Thus, according to the test established in *Simpson, supra*, it appears that Vermont is a deferral state within the meaning of § 633(b).

However, as defendants correctly point out, Vermont's age discrimination law specifically excludes from its reach state police retirement systems which require retirement on account of age. 21 V.S.A. § 495f. This exclusion calls into question whether, for purposes of this particular case, Vermont should be treated as a deferral state.

■ Although § 633(b) does not by its terms require that the claimant's claim be within coverage of the state age discrimination before the 300-day notice requirement is triggered under § 626(d), we believe such a requirement arises by necessary implication. The purpose of § 633(b) is to give state agencies an opportunity to settle grievances in a voluntary and localized manner so that the claimants thereafter have no need for independent federal relief. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609 (1979). Where, as here, the state agency is powerless to affect any settlement or conciliation between the parties, the policies behind § 633(b) are not served by requiring the claimant to commence state proceedings. *See Sturgeon v. Avon Products, Inc.*, 571 F.2d 5 (7th Cir.1978) (where no redress is available under state discrimination law, plaintiff not required to file notice with state agency under § 633(b)); *Curry v. Continental Airlines*, 513 F.2d 691 (9th Cir.1975) (plaintiff not required to defer to state agency because agency had policy of not hearing cases where violation occurred before agency assumed jurisdiction over age discrimination).

■ Accordingly, we hold that, because no redress is available to plaintiff under Vermont law, § 633(b) is not invoked in this case. Consequently, the 300-day limitation period prescribed in § 626(d)(2) is also inapplicable. Plaintiff was required to file his claim within 180 days from the date of the alleged violation.

■ The next question is whether plaintiff's failure to file his notice with the EEOC within the 180-day time limit bars this action. Although many courts have, in the past, held that the notice requirement is jurisdictional in nature such that failure to comply is an absolute bar to bringing a private action, *see, e.g., Dartt v. Shell Oil*

*Co.*, 539 F.2d 1256, 1259 n. 2 (10th Cir.1976) *aff'd without opinion*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977), it is now settled that the notice requirement is more analogous to a statute of limitations. *See Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 1133 n. 11, 71 L.Ed.2d 234 (1982) (quoting House Conference Report No. 950, 95th Cong., 2d Sess., at 12), *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir.1975). As such, the notice requirement is subject to equitable tolling and estoppel. *Reeb v. Economic Opportunity of Atlanta, Inc., supra*, 516 F.2d at 928. Thus, the question becomes whether plaintiff has alleged facts which, if assumed to be true, are sufficient to establish an equitable basis for tolling the limitation period combined in § 626(d).

■ Defendants concede they violated their statutory obligations under the Act by neglecting to post notice informing state police officers of their rights under the ADEA. Such notice is required to be posted in a conspicuous place on the employer's premises. 29 U.S.C. § 627, 29 C.F.R. § 1627.10 (1984). The purpose of this provision is to insure that employees are informed of their rights under the Act. Because it would be manifestly unfair to permit employers to violate the posting requirement without penalties, courts have uniformly held that failure to post notice tolls the 180-day limitation period until the claimant acquires actual knowledge of his rights under the Act or seeks the services of an attorney. *Vance v. Whirlpool, Corp.*, 716 F.2d 1010, 1012 (4th Cir.1983); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 193 (3rd Cir.1978); *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir.1978).[1] Whether a claimant has actual knowledge of his rights under the Act is a question of fact. *See, Vance, supra*, 716 F.2d at 1013.

---

1. The test employed by some courts has varied slightly from the rule cited above; some are more strict, others less so. *Compare Earnhardt v. Commonwealth of Puerto Rico*, 691 F.2d 69, 72 (1st Cir.1982) (failure to post notice tolls limitation period until employee acquires "actual or constructive knowledge of ADEA complaint procedures.") *(emphasis supplied) with Templeton v. Western Union Telegraph*, 607, F.2d 89, 91, (5th Cir.1979) (limitation period begins to run when employee acquires actual knowledge or "the means of knowledge" of his rights under the ADEA.

In this case, whether Plaintiff had actual knowledge of his rights under the Act sufficient to trigger the running of the limitation period is disputed by the parties. Plaintiff claims that, though he had a general awareness of a federal law prohibiting age discrimination, he first became aware of his rights under the ADEA in September of 1983 at the State Troopers' meeting. Based on the same facts, Defendants' claim Plaintiff had long been aware of his rights, but failed to act on them. These allegations, when viewed in a light most favorable to the plaintiff, establish genuine issues of material fact on the question whether the limitation period was tolled until September, 1983. In this case, it will be for the jury to decide when plaintiff became aware of his rights and, thus, whether the 180-day limitation period had run before he filed his claim.

Defendants also claim that plaintiff's ADEA claim must be dismissed because mandatory retirement of state police officers at age 55 is a bona fide occupational qualification (BFOQ). Under the ADEA, "it is not unlawful for an employer to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable facts other than age." 29 U.S.C. § 623.

Whether age is a BFOQ is a question of fact. *Air Line Pilots Association v. Transworld Airlines,* 713 F.2d 940, 954 (2d Cir.1983). Moreover, the BFOQ exception "must be narrowly construed and may be invoked only if an employer proves 'plainly and unmistakably' that its employment practice meets the 'terms and spirit'" of the Act. *Id.* at 454, quoting *A.H. Phillips Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945). The defendants must demonstrate, at the very least, that the age restriction is reasonably related to an essential operation of the business, *Orzel v. City of Wauwatosa Fire Dept., supra,* 697 F.2d at 753. Defendants must prove, for example, that the age restriction is not motivated by economic considerations. *Smallwood v. United Air Lines, Inc.,* 661 F.2d 303, 307 (4th Cir. 1981). *cert. denied,* 456 U.S. 1007, 102 S.Ct. 2299, 73 L.Ed.2d 1302 (1982).

The defendants claim, however, that the mandatory retirement age of 55 for state police officers is a BFOQ, *as a matter of law.* Defendants rely on a recent Fourth Circuit case, *Johnson v. Mayor and City of Baltimore,* 731 F.2d 209 (4th Cir.1984) which reversed the finding by the trial court that the defendants did not establish that age was a BFOQ for Baltimore's firefighters. The *Johnson* court relied on *Equal Employment Opportunity v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983) in arriving at the conclusion that, because Congress had found age is a BFOQ for federal firefighters, it could be *presumed* that age is also a BFOQ for Baltimore's firefighters.

In *Equal Employment Opportunity v. Wyoming, supra,* the Supreme Court held that the extention of the ADEA to state and local governments is a valid exercise of Congress' powers under the Commerce Clause and is not prohibited by the Tenth Amendment. In so holding, the Court stated:

> "Perhaps more important, appellees remain free under the ADEA to continue to do *precisely what they are doing now,* if they can demonstrate that age is a 'bona fide occupational qualification' for the job of game warden. [Citation omitted]. Thus, in distinct contrast to the situation in *National League of Cities v. M.J. Usery, supra,* [426 U.S. 833] at 848 [96 S.Ct. 2465 at 2472, 49 L.Ed.2d 245] even the State's discretion to achieve its goals *in the way it thinks best* is not being overridden entirely, *but is merely being tested against a reasonable federal standard.*"

*Equal Employment Opportunity v. Wyoming, supra,* 460 U.S. at 240, 103 S.Ct. at 1062. Based upon this language, the *Johnson* court determined that its duty was to "initiate a search for a 'reasonable federal

standard' by which to test whether age is a *bona fide* occupational qualification for Baltimore's firefighters." *Johnson v. Mayor and City of Baltimore, supra,* 781 F.2d at 212. The court there concluded that "[w]here Congress itself has deemed age to be a bona fide occupational qualification for federal firefighters, we perceive no justification for ignoring the Congressional mandate in ascertaining 'a reasonable federal standard' by which to measure firefighting in the City of Baltimore. *Id.* at 212–13.

We do not view *Johnson* as viable precedent in this case. Even if the above-quoted passage from *EEOC v. Wyoming* stands for the proposition that, where Congress has found age to be a BFOQ in a related situation, the essential inquiry becomes a question of law,[2] we are not convinced the Congressional determination that age is a BFOQ for federal police officers is relevant in this case. First, there has been no showing that the federal government's program is sufficiently comparable to Vermont's to permit us to presume that age is a BFOQ under Vermont's system. Second, the Supreme Court in *EEOC v. Wyoming* implicitly rejected such a method for determining whether age is a BFOQ. The Court stated "[w]e note, incidentally, that the strength of the federal interest underlying the Act is not negated by the fact that the federal government happens to impose mandatory retirement on a small class of its own workers." *EEOC v. Wyoming,* 460 S.Ct. at 242 n. 17 (citations omitted).

In sum, we find no support in *EEOC v. Wyoming* for the proposition that a Congressional finding that age is a BFOQ for federal employees operates, as a matter of law, to establish a BFOQ in similar state-employee ADEA actions. *See* n. 2 *supra.* As Chief Judge Harrison stated in his dissenting opinion in *Johnson,* "the fact that Congress may require some federal firefighters to retire at age fifty-five does not excuse Baltimore from proving the

facts necessary to satisfy 29 U.S.C. § 623(f)(i)." *Johnson v. Mayor and City of Baltimore,* 731 F.2d at 218. Nor should it excuse Vermont from meeting its burden in this case.

## B. The Equal Protection Claim

Defendant's next contend that plaintiff's equal protection claim under the United States Constitution should be dismissed because it fails to state a claim as a matter of law. The parties agree that the appropriate standard of review on this issue is the rational-basis standard, as no fundamental rights or suspect class are implicated in this dispute. *See, e.g. Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Accordingly, the only issue presented by plaintiff's equal protection claim is whether Vermont's mandatory retirement statute, 3 V.S.A. § 459(a)(2), is rationally related to a legitimate governmental purpose. *See, Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982). Defendants argue that whether the statute is rationally related to its goal is a question of law, proper for determination on a motion for summary judgment.

Where, as here, there are no articulated purposes underlying the statute in question, the Court's inquiry becomes one of determining whether, under the surrounding circumstances and through application of logic, there exists "a legitimate purpose that we may reasonably presume to have motivated an impartial legislature." *Frazier v. Manson,* 703 F.2d 30, 34 (2d Cir.1983) *quoting United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 180–87, 101 S.Ct. 453, 462–65, 66 L.Ed.2d 368 (1980) (Stevens, J., concurring). Absent any evidence that the legislature lacked a legitimate reason for the lines drawn by the challenged statute—and in this case plaintiff has proffered none—the court may "explore other rational justifiable bases." *Frazier v. Manson, supra,*

---

**2.** We think the *Johnson* court's reading of *EEOC v. Wyoming* is overbroad. Our understanding of the above-cited passage is that the "reason-

able federal standard" the Supreme Court was referring to is the BFOQ standard itself, not Congressional findings.

703 F.2d at 35. As was the case in *Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 314, 96 S.Ct. at 2567, logic and common sense supports the conclusion that Vermont could have been motivated by the desire to protect the public by assuring physical preparedness of its uniformed police. *See id.* at 314 n. 7, 96 S.Ct. at 2567–68. The Court therefore concludes that it was rational for the Vermont Legislature to require mandatory retirement for all state police officers. Plaintiff's equal protection claim must be dismissed.

### C. The Pendent State Claim

Given the disposition of plaintiff's ADEA claim, there can be no question that the pendent state constitutional claim is properly before the Court, since both claims arise out of the same nucleus of operative fact. *See United Mine Workers of America v. Gibbs* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, defendants nevertheless claim that the Court should abstain from deciding the state constitutional claim.

Abstention is appropriate only where the issue of state law is uncertain and where resolution of the issue in state court would obviate the need to adjudicate a federal constitutional question. *Wisconsin v. Constantineau,* 400 U.S. 433, 438–39, 91 S.Ct. 507, 510–11, 27 L.Ed.2d 515 (1971). *See also, Jancyn Manufacturing Corp. v. County of Suffolk,* 583 F.Supp. 1364, 1370 (E.D.N.Y.1984).

Here, the state constitutional claims raised are plain and unambiguous.

Plaintiff claims his rights were violated under Chapter I, Articles 7 and 9 of the Vermont Constitution.[3] As construed by the Vermont Supreme Court, Article 7 is "[s]omewhat similar to the equal protection test of the fourteenth amendment [and] only allows the statutory classifications involved .... if a case of necessity can be established overriding the prohibition of Article 7 by reference to the 'common benefit, protection, and security of the people.'" *State v. Ludlow Supermarkets,* 141 Vt. 261, 268, 448 A.2d 791 (1982).

By its terms, Article 9 is similar to the federal due process clause of the fourteenth amendment. The fact that the Vermont Supreme Court has not had the opportunity to interpret Article 9 within the same context as asserted here is irrelevant, for "abstention should not be ordered merely to await an attempt to vindicate the claim in a state court." *Wisconsin v. Constantineau, supra,* 400 U.S. at 438–39, 91 S.Ct. at 510–11. *Accord Barry v. Barchi,* 443 U.S. 55, 63 n. 10, 99 S.Ct. 2642, 2648 n. 10, 61 L.Ed.2d 365 (1979).

Finally, given the disposition of plaintiff's federal equal protection claim, abstention in this case will not further the goal of avoiding adjudication of federal constitutional questions. Therefore, the Court declines to abstain from deciding plaintiff's state constitutional claims.

### ORDER

Based upon the foregoing, it is hereby ORDERED that:

---

**3.** Article 7 states:

"That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any single man, family, or set of men, who are a part only of that community; and that the community, hath an indubitable, unalienable, and indefeasible right, to reform or alter government, in such a manner as shall be, by that community, judged most conducive to the public weal."

Article 9 states:

"That every member of society hath a right to be protected in the enjoyment of life liberty, and property, and therefore is bound to contribute his proportion towards the expence of that protection, and yield his personal service, when necessary, or an equivalent thereto, but no part of any person's property can be justly taken from him, or applied to public uses, without his own consent, or that of the Representative Body of the freemen, nor can any man who is conscientiously scrupulous of bearing arms, be justly compelled thereto, if he will pay such equivalent; nor are the people bound by any law but such as they have in like manner assented to, for their common good: and previous to any law being made to raise a tax, the purpose for which it is to be raised ought to appear evident to the Legislature to be of more service to community than the money would be if not collected."

**152**

Defendant's Motion for Summary Judgment with regard to plaintiff's ADEA claim is DENIED.

Defendant's Motion for Summary Judgment with regard to plaintiff's federal equal protection claim is GRANTED.

Defendant's Motion for Summary Judgment with regard to plaintiff's state constitutional claim is DENIED.