Sharlene **FELLOWS**, Plaintiff,

v.

**EARTH CONSTRUCTION, INC.**, Defendant.

**Civ. A. No. 90–207.**

United States District Court, D. Vermont.

Feb. 26, 1992.

Deborah T. Bucknam, St. Johnsbury, Vt., for plaintiff.

Heather Briggs, Downs Rachlin & Martin, Burlington, Vt., for defendant.

## OPINION AND ORDER

FRED I. PARKER, Chief Judge.

On June 28, 1990, plaintiff Sharlene Fellows filed a Complaint in Vermont Superior Court alleging that Earth Construction, Inc. ("ECI") discriminated against her be-

cause of her sex in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Vermont Fair Employment Practices Act, 21 V.S.A. § 495 et seq. ("FEPA"). ECI removed the action to this court pursuant to 28 U.S.C. §§ 1441 and 1446.

Prior to this lawsuit, plaintiff exhausted her state and federal administrative remedies pursuant to 42 U.S.C. § 2000e–5. On October 28, 1988, the Public Protection Division of the Vermont Attorney General's Office concluded that defendant had both discriminated and retaliated against plaintiff. On July 13, 1989, the United States Equal Employment Opportunity Commission ("EEOC") came to the same conclusion as the state agency had, and accordingly issued plaintiff a Notice of Right to Sue on April 17, 1990.

Defendant now comes before this court moving for summary judgment in its favor on two independent grounds, while plaintiff moves to amend her Complaint and to extend discovery. All motions are opposed.

### Background

The background of this case is as follows. Plaintiff is a woman who was employed by defendant, a Vermont corporation, from September 17, 1985 to June 7, 1986. Both parties agree that plaintiff was initially hired as a flag person at the construction site of the hospital connector bridge outside of St. Johnsbury, Vermont. Two or three weeks after she was hired, plaintiff was asked by David Shields, her supervisor, if she wanted to enroll in a job training program. It is uncontested that plaintiff agreed and was enrolled retroactive to her first day of work. The training program, which was sponsored by the Vermont Agency of Transportation ("VAT") and was jointly administered by VAT and ECI, taught plaintiff to be a bridge construction laborer. In addition to that position, plaintiff would variously work as a roller operator and flag person, as needed.

The parties dispute information concerning plaintiff's wage rate as it related to the training program sponsored by VAT. The ECI–VAT agreement provided that a train-

ee would be paid at 60% of the established wage rate for the first 520 hours of training, 75% for the next 260 hours and 90% for the remainder of the required total of 1,040 hours. Although both the plaintiff and defendant agree that during the fall of 1985, plaintiff was paid 100% of the wage rate, they dispute the reason that plaintiff was not paid according to the agreed training schedule. Defendant claims it made an administrative error, whereas plaintiff maintains that defendant and VAT had both verbally agreed to pay her 100% of the approved wage at all times in contrast to the written agreement which plaintiff had signed, even though she was considered a trainee. In any event, in the spring of 1986, plaintiff's wages were reduced to 60% of the established wage rate the reason for which is also disputed. Defendant claims that it simply remedied its administrative mistake, while plaintiff apparently believes her oral agreement with defendant was not honored because of her gender.

It is undisputed that on November 1, 1985, plaintiff was laid off for the winter season. In March 1986, plaintiff attended, as part of the training program between the state and defendant, a 40–hour concentrated heavy-equipment training program. In early April, Shields called plaintiff and told her that construction would recommence in mid-April. On April 16, plaintiff returned to her position as bridge construction laborer trainee. She was paid $4.50 per hour as a trainee laborer for her work in St. Johnsbury. The parties agree that for the first two and one-half days she was back at work, plaintiff worked under the general supervision of William Frye on the ECI's bridge construction project in St. Johnsbury, until he was transferred to a project in Rutland on April 18. Plaintiff next worked on April 22, but left early due to a work-related injury sustained the prior week.

It is further uncontested that plaintiff returned to work on April 26, at which point the St. Johnsbury project had temporarily closed. When she returned, she was assigned to a site in Hyde Park, Vermont,

and was again supervised by Shields. For her work at that location, plaintiff was paid $5.25 per hour for work as a flagperson, $6.03 for work as a laborer and $5.46 for work as a roller-operator trainee.

The parties agree that after working in Hyde Park for approximately four weeks, Shields asked plaintiff if she wanted to work in Carroll, New Hampshire for a brief period of time until there was work suitable for her in St. Johnsbury. She agreed and commenced work on June 2 in Carroll, still under the supervision of Shields. She worked as a flag person all week at the rate of $5.25 per hour.

It is also undisputed that on Friday, June 5, plaintiff complained to Shields that she had not been paid for the holiday (Memorial Day) on May 26. Plaintiff had worked Friday, May 23 for nine hours as a laborer, and Tuesday, May 27 for two hours as a roller trainee and seven hours as a flag person. Defendant admitted that it inadvertently failed to pay plaintiff for the holiday initially. On June 7, plaintiff was terminated by Shields. The parties contest the reason for plaintiff's termination.

Against this factual background plaintiff alleges that she was improperly discriminated against because of her sex in that: (1) her agreed wage rate, which was in excess of the normal training rate, was later reduced improperly;[1] (2) certain comments made to her by defendant's foreman, Frye, were indications of discrimination; (3) Frye placed her in physical danger because he did not want to work with a woman, and such danger actually caused her physical injury; (4) lesser qualified men were chosen instead of her for equipment operator jobs; (5) she was initially not paid certain holiday pay while male employees were so paid; (6) she was subjected to different terms and conditions of employment than her male coworkers; and (7) she was terminated in retaliation for her claims of sexual discrimination.

**1.** Plaintiff never specifically alleges that her pay rate was reduced in the spring of 1986 because she was a woman, but that it was done in breach of an agreement she had made with defendant. However, she indicates in her Complaint that she was paid less than male counter-

### 1. *Defendant's Motion for Summary Judgment*

On March 15, 1991, defendant filed a motion for summary judgment (Paper # 14), claiming that (1) plaintiff's claim under Title VII is barred by the statute of limitations, and (2) that plaintiff has failed to state a claim under the state FEPA.

Summary judgment should be rendered for the moving party if the court finds that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In considering the motion, the court's responsibility is not to resolve disputed factual issues, but to determine whether there is a genuine issue to be tried. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). The court must draw all reasonable inferences in favor of the non-moving party and only grant summary judgment for the moving party if no reasonable trier of fact could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986); *Knight v. United States Fire Ins., Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

### A. Title VII's Statute of Limitations

■ Defendant urges summary judgment in its favor, because plaintiff's Complaint was filed untimely causing it to be barred by Title VII's statute of limitations. Title VII provides that within ninety days after the issuance of a right to sue letter, "a civil action may be brought against the respondent." 42 U.S.C. § 2000e–5(f)(1).

Plaintiff received a right to sue letter from the EEOC on April 18, 1990, served her Complaint on defendant on July 3, and filed it in Superior Court in August.[2] Rule

parts for equal work. She also contends that she was fired when her supervisor told her that he believed her to be dissatisfied with the "pay rate."

**2.** It is unclear precisely when in August the Summons and Complaint were filed. Defen-

3 of the Vermont Rules of Civil Procedure authorizes the commencement of an action by service, so long as it is filed with the court within 20 days after the completion of service upon the first defendant served. Therefore, plaintiff's Complaint was filed untimely.

Plaintiff concedes the untimely filing to be beyond Title VII's statute of limitations, but argues that the late filing was due to excusable neglect thus tolling the statute. Plaintiff notes that her attorney had been preparing for and trying a jury trial, and had left for vacation on July 24, 1990, not returning until August 10, 1990.

In response to plaintiff's claim of excusable neglect, defendant asserts that the principle of "equitable tolling" of the statute of limitations is inapplicable in a Title VII case, where late filing was due to such "garden variety" neglect. In support of its contention, defendant cites *Irwin v. Veterans Admin.*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). In the *Irwin* case, however, there was a governmental agency as defendant, and the Court contrasted its holding to the rule in Title VII cases against private employers, which *are* subject to equitable tolling. *Id.* 111 S.Ct. at 457 (citing *Hallstrom v. Tillamook County*, 493 U.S. 20, 110 S.Ct. 304, 309, 107 L.Ed.2d 237 (1989); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). Unlike the defendant Veterans Administration in *Irwin*, ECI is a private entity, and the princi-

ples of equitable tolling are applicable in an action against it.

The instant case is also distinguishable from *Irwin* in that when Fellows received notice that her Complaint had not been properly filed, she immediately did everything she could to effect the filing, thus preserving her rights.[3] Because this case represents classic excusable neglect coupled with a private defendant, the statute of limitations may be equitably tolled as to plaintiff's Title VII claim, and defendant's Motion for Summary Judgment as to that claim is DENIED.

**B. Plaintiff's Claim Under Vermont Fair Employment Practices Act**

Defendant also seeks summary judgment on plaintiff's charge under the state FEPA, 21 V.S.A. § 495, contending that plaintiff fails to properly state a claim. Defendant raises several arguments in support of its motion. Because defendant is correct that plaintiff's state action is barred by the statute of limitations, it is not necessary to address any of the other issues with regard to her state claim.

Defendant argues that plaintiff's state FEPA claim is barred by the three-year statute of limitations applicable to personal injury actions under 12 V.S.A. § 512.[4] The Vermont Supreme Court has not specifically addressed the issue of what statute of limitations is applicable to employment discrimination claims brought pursuant to FEPA. However, it has indicated that civil rights claims brought pursuant to 42 U.S.C. § 1983[5] are governed by the

---

dant's Memorandum in Support of its Motion for Summary Judgment (Paper # 16) indicates that the Complaint was filed with the court on August 14, 1990, while Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Paper # 19) maintains that the Complaint was filed on August 3, 1990. Moreover, defendant's Memorandum of Law in Response to Plaintiff's Reply memorandum (Paper # 27) insists that the Complaint was not filed until August 21, 1990. *See also infra*, note 3. In any event, the exact date in August on which the Complaint was actually filed with the court is not a material fact in dispute, since the plaintiff expressly concedes that she did not meet the twenty-day filing requirement of V.R.C.P. 3.

**3.** Apparently, plaintiff's counsel believed the Complaint had been filed with the court on

August 3, 1990, until she was informed by the court on August 13 that the court had received a Return of Service from plaintiff's counsel, but had no case with which to file it. Plaintiff's counsel (through her office manager) evidently filed the Complaint with the court shortly after hearing from the court. *See* Affidavit of Barbara A. Hill, attached to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Paper # 19) as Exhibit "A."

**4.** Plaintiff contends that Vermont's six-year general statute of limitations, 12 V.S.A. § 511 controls.

**5.** Section 1983 provides:

[E]very person who, under color of any statute, ordinance, regulation, custom, or usage,

state statute of limitations for personal injury actions. *Shields v. Gerhart,* 155 Vt. 141, 145, 582 A.2d 153 (1990) (state statute of limitations for personal injury actions applied to section 1983 action for retaliatory revocation of license) (citing *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985)); *see also Morse v. University of Vermont,* 776 F.Supp. 844 (D.Vt.1991) (state statute of limitations for personal injuries applicable to anti-discrimination claim under federal Rehabilitation Act). It is thus reasonable to conclude that the Vermont Supreme Court would likewise apply the three-year limitations period to a state civil rights action which is based on alleged employment discrimination.

Moreover, other courts have held that state personal injury statutes of limitations provide the appropriate limitations period for claims brought pursuant to a state employment discrimination statute. *See e.g., Lewis v. Lockheed Shipbuilding & Constr. Co.,* 36 Wash.App. 607, 676 P.2d 545 (1984); *Scott v. Union Tank Car Co.,* 402 N.E.2d 992 (Ind.App.1980). Therefore, this court will apply Vermont's personal injury statute of limitations to plaintiff's employment discrimination claim made pursuant to 21 V.S.A. § 495.

■ The statute of limitations for personal injury actions in Vermont is three years. 12 V.S.A. § 512. Plaintiff was terminated from employment with defendant on June 7, 1986. The date of her termination is the latest possible date for accrual of both the discrimination and retaliation claims, since "a cause of action accrues when the plaintiff knew or should have known of the injury that serves as the basis for the action." *Shields,* 155 Vt. at 146, 582 A.2d 153 (citing *Keating v. Carey,* 706 F.2d 377, 382 (2d Cir.1983)). In order to be timely, then, plaintiff's action under the state FEPA had to be filed on or before June 7, 1989. Because plaintiff filed her suit in August 1990, more than one year

after the statute of limitations for her state claims expired, it is barred as untimely.

■ Plaintiff contends that her pursuit of administrative remedies should toll the statute of limitations for her state action. In support of her argument, plaintiff maintains that Vermont's status as a "deferral state," and the Vermont Attorney General's failure to inform her of the state statute of limitations both suggest her state claim should be allowed outside of the limitations period.

As to plaintiff's first argument, that Vermont is a "deferral state," plaintiff cites *Galvin v. State of Vermont,* 598 F.Supp. 144 (D.Vt.1984). In *Galvin,* the court analyzed an age discrimination suit brought under the Federal Age Discrimination in Employment Act ("ADEA"). It noted that states which have a law prohibiting age discrimination in employment and a state agency authorized to seek relief for individuals suffering such discrimination are deferral states. *Id.* at 147. In a "deferral" state, a claimant is allowed by statute to file notice of an ADEA action with the EEOC 120 days later than in a non-deferral state. The purpose of the longer filing period is to afford state agencies time to investigate claims. *Id.*

Plaintiff in the instant case argues that if she were required to file her state claim while administrative remedies were pending, the result would be in contrast to *Galvin's* holding. But *Galvin* does not apply to the instant case. FEPA is governed by a fixed statute of limitations which provides no accommodation for administrative action. Whether plaintiff pursued the administrative channels or not, the statute of limitations for her state claim is three years. The period is not extended simply because the administrative remedies exist.

■ Plaintiff's second argument in support of her position that the statute of limitations applicable to FEPA ought to be tolled where administrative remedies are

of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

being pursued is that it was the state Attorney General's duty to inform her of the statute of limitations. In support of her argument, plaintiff cites two cases which hold that agencies' inaccurate information to plaintiffs about Title VII's statute of limitations periods serves to equitably toll the limitations periods for such claims. *Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857 (10th Cir.1983); *Carlile v. South Routt School Dist. RE3–J*, 652 F.2d 981 (10th Cir.1981). Those cases deal with Title VII's statute of limitations, not state limitations periods, and are accordingly inapposite. Also, in this case plaintiff does not submit that she inquired as to the limitations period, and was affirmatively misled, as was the case in *Balseyro* and *Carlile*. Finally, simply because Title VII's statute of limitations may be equitably tolled, it does not follow that such tolling is applicable to civil rights claims under other statutes. *Johnson v. Railway Express Agency*, 421 U.S. 454, 466, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1974).

Title VII's statute of limitations was equitably tolled as to plaintiff; therefore defendant's motion for summary judgment is DENIED as to plaintiff's federal claim. Plaintiff's state cause of action is barred by the statute of limitations, and defendant's motion for summary judgment in its favor on plaintiff's FEPA claim is GRANTED.

### 2. *Plaintiff's Motion to Amend Complaint*

On May 9, 1991, plaintiff filed a Motion to Amend her Complaint (Paper # 23). Specifically, she seeks leave to add a count of wrongful discharge on the basis of sex as a violation of public policy in Vermont. The Motion was filed untimely, and plaintiff has not shown good cause why the motion should be allowed out of time. The cause of action she seeks to add is in any event precluded by an adequate statutory remedy.

■ Initially, plaintiff's Motion to Amend her Complaint was filed untimely, since the cause of action she pled could have been charged in her original Complaint. As defendant correctly asserts, the precedent of *Payne v. Rozendaal*, 147 Vt. 488, 520 A.2d 586 (1986), upon which plaintiff's motion relies, existed well before plaintiff's counsel signed the Complaint on June 28, 1990. Also, the facts which give rise to the new allegation are the same as those which already form the basis of plaintiff's original claims. Thus, the proffered amendment is based neither upon new legal precedent nor upon recent factual developments.

■ Despite the untimeliness, the court will grant the motion if plaintiff shows good cause for her action, or if justice requires that the motion be granted. On November 13, 1990, plaintiff and defendant agreed to a discovery schedule (Paper # 10) which stipulated, *inter alia*, that "[a]ll motions shall be filed by March 15," and that the case "shall be ready for trial by May 1, 1991." According to Local Rule 5(B), such discovery schedules shall be binding.[6] Once the discovery schedule is set, it shall not be modified except by leave of the judge "upon a showing of good cause." Fed.R.Civ.P. 16(b). Moreover, the Rules require that the court is to freely give leave for parties to amend their pleadings "when justice so requires." Fed.R.Civ.P. 15(a).

In the instant case, plaintiff neither argues good cause nor that justice requires amendment. Rather, her contention is that there is a strong policy of liberality in allowing amendments to pleadings where there is no prejudice to the other party, and cites *Bevins v. King*, 143 Vt. 252, 465 A.2d 282 (1983). Plaintiff also cites *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), which requires the court to give justifying reasons for denying plaintiff's motion to amend. *Id.* at 182, 83 S.Ct. at 230. Since plaintiff has not shown good

---

6. Local Rule 5(B) provides, in pertinent part: "all pretrial motions including motions ... to amend the pleadings shall be filed at the earliest practical date and in any event no later than the final date for discovery fixed by the schedule required in Local Rule 4(A) or (B), whichever shall be later...."

cause why she should be allowed to amend, and justice does not so require, Plaintiff's Motion is denied.

■ Finally, even if plaintiff's motion were otherwise appropriate, the cause of action proffered in the motion is precluded. Her Motion to Amend Complaint claims "wrongful discharge on the basis of sex as a violation of public policy in Vermont." Such an independent common law action is precluded by the existence of an adequate statutory remedy. As a basis for her common law claim, she cites *Payne v. Rozendaal*, 147 Vt. at 488, 520 A.2d 586, which was an age discrimination case. At the time of plaintiff's discharge in *Payne*, no statutory remedy existed in Vermont prohibiting the discharge of an at-will employee solely on the basis of age. The Court thus found it necessary to rely on public policy grounds in finding for plaintiffs. As a result, the Court held that in Vermont, under an "at will" employment contract, an employee may be discharged at any time with or without good cause, "unless there is a *clear and compelling* public policy against the reason advanced for the discharge." *Id.* at 491, 520 A.2d 586 (emphasis in original). The court indicated parenthetically that it was expressing no opinion regarding the circumstances under which, or the factors to be taken into consideration for determining when a state statutory remedy preempts a common law cause of action for age discrimination. *Id.* at 494 n. *, 520 A.2d 586.

It is well settled in other courts, though, that common law claims are preempted where a statutory remedy exists. *See e.g., Parlato v. Abbott Labs.*, 850 F.2d 203 (4th Cir.1988); *Blum v. Witco Chem. Corp.*, 829 F.2d 367 (3d Cir.1987); *Lapinad v. Pacific Oldsmobile–GMC, Inc.*, 679 F.Supp. 991 (D.Hawaii 1988). The case before this court, in contrast to *Payne*, concerns a cause of action for which there is a statutory remedy—namely, 21 V.S.A. § 495. As a result, plaintiff's common law claim based upon public policy grounds is preempted.

Accordingly, plaintiff's Motion to Amend Complaint is DENIED.

### 3. *Plaintiff's Motion to Extend Discovery*

■ On November 29, 1991, plaintiff filed a Motion to Extend Discovery (Paper # 29). Specifically, she seeks time to take the deposition of Daniel Brodien, a potential witness who initially refused to speak to counsel. Apparently, Brodien was a state employee with the Vermont Department of Transportation who was aware of some of the material facts in this case. Plaintiff's motion further asserts that when her attorney became aware of Brodien's refusal to speak with her, she sought to depose him. However, he was unavailable until after the discovery period was completed. Accordingly, on March 14, 1991, counsel sent to defendant's attorney a stipulation to extend the discovery period an additional six weeks in order to take the deposition. Opposing counsel refused to consent to the stipulation, contending that the local rules indicate that a request for an extension, after the close of the discovery period, can only be granted by motion. On November 29, 1991, plaintiff filed her motion to extend discovery.

Plaintiff's Motion to Extend Discovery is untimely. Plaintiff originally noticed the deposition of Brodien on February 21, 1991, to occur on March 6, 1991, after the February 15, 1991 deadline for the taking of depositions had expired.

The Motion to Extend Discovery was not filed until November of 1991, despite the discovery order's March 15, 1991 deadline for filing motions. While a judge may modify a discovery schedule "upon a showing of good cause," Fed.R.Civ.P. 16(b), no such cause has been shown in the instant case for a delay of more than eight months after the deadline for filing motions expired. According to correspondence between counsel for the parties, attached to Defendant's Memorandum in Opposition to Plaintiff's Motion to Extend Discovery, plaintiff's counsel had notice in February 1991 that Brodien would not be available for a deposition until April. Plaintiff's Motion indicates no changes which have occurred since February to justify the fact

that her Motion to Extend Discovery was not filed until late November.

Since plaintiff initially attempted to take the deposition of Daniel Brodien after the time period for taking of depositions had expired, and because her extension motion was filed well after the expiration of the time for filing motions without good cause shown, plaintiff's Motion to Extend Discovery is DENIED.

## CONCLUSION

It is hereby ORDERED that defendant's Motion for Summary Judgment (Paper # 14) is GRANTED as to the state FEPA claim, and DENIED as to the federal Title VII claim.

It is further ORDERED that plaintiff's Motions to Amend Complaint (Paper # 23) and to Extend Discovery (Paper # 29) are DENIED.